THE NOTTINGHAM. THE BARGE NO. 7. CENTRAL R. CO. OF NEW JERSEY v. PENDLETON.

(Circuit Court of Appeals, First Circuit. January 26, 1906.)

No. 585.

COLLISION—SCHOONER AND BARGE IN TOW—INEFFICIENT LOOKOUT.

Evidence considered, and *held* to establish fault on the part of a tug and her tow and a schooner for a collision in Nantucket Sound at night between the schooner and tow while on nearly parallel opposite courses—the tug in running too near the easterly side of the channel, unduly crowding the schooner, which was to the eastward and near shoal water, and in not sooner discovering the schooner's lights; the tow in failing to keep a proper lookout or to change her wheel when collision was imminent; and the schooner in failing to see the lights on the tow, and negligently taking a course which brought her upon a bell buoy and made a further change of course necessary.

Appeal from the District Court of the United States for the District of Massachusetts.

La Roy S. Gove (James J. Macklin and Edward S. Dodge, on the brief), for appellant.

Eugene P. Carver (Edward E. Blodgett, on the brief), for appellee.

Before PUTNAM, Circuit Judge, and ALDRICH and BROWN, District Judges.

BROWN, District Judge. The schooner Levi Hart and barge No. 7, second in tow of the steamtug Nottingham, were in collision about 10 p. m. on April 20, 1904, north of Pollock Rip Lightship and near the bell buoy on the easterly side of Pollock Rip Slue. The schooner and her cargo of coal were a total loss. The night was cloudy, but otherwise clear; the wind moderate and northerly, if not due north. The tide at or near the bell buoy was running northeast, about two knots an hour. The schooner was on a south-southwest course, with her booms well off on her port side, going about six miles an hour through the water, and about four miles an hour over the ground. Her course brought her close to the bell buoy, near which her master says he intended to go in order to give the tow a chance to get by.

The evidence from the tug and barges as to their course is not consistent or satisfactory. The answer filed June 21, 1904, alleged that the Nottingham was proceeding according to law on the easterly side of the channel. Tingle, the master of the Nottingham, says that he was on the westerly side; that when rounding buoy No. 2, near the Pollock Rip Lightship, he passed about fifty feet from it; that he straightened the tow out, and when the Nottingham was abreast of the bell buoy he first made out the green light of the Hart, and that he then had Pollock Rip Shoal Lightship bearing north-northeast, and was steering north by compass. He had at that time taken no precaution for keeping out of the way of the schooner.

The tow was made up as follows: Nottingham, hawser more than 1,000 feet; Wilkesbarre, hawser 900 feet; barge No. 7, hawser 900 feet; barge No. 5—in all, more than 3,500 feet in length; the bow of barge No. 7 being about 2,000 feet from the stern of the tug.

The sunken wreck of the Hart is marked by a buoy, described in the local notice to mariners as "placed at the entrance of Pollock Rip Slue, Nantucket Sound, Mass., Pollock Rip Bell Buoy being about 300 yds. N. ⅜ E." The schooner lies somewhat to the east of the buoy.

Making due allowance for drift and other causes which might have carried the Hart from the place of collision, it seems highly probable that barge No. 7 was about 900 feet south of the bell buoy, and the Nottingham little, if any, more than 1,100 feet to the north of the bell buoy, when the collision occurred. The speed of the tug and tow, assisted by the tide, was about 6 miles an hour. The schooner passed both the tug and the Wilkesbarre, the first barge, by a safe clearance, though, according to the captain and wheelsman of the Wilkesbarre, the schooner's course seemed to be converging upon that of the tow. This convergence, we think, does not indicate any change by the Hart from her south-southwest course. The exact location of barge No. 7 with reference to the Wilkesbarre and the line of tow at this time is a matter of doubt.

It is the contention of the claimant that the barges were all straight in line after the tug, that the tug was steering north by the compass, and that each of the barges was held up stiffly on a starboard wheel, and that the resultant course was north-northeast. Capt. Hanson, of barge No. 7, and Capt. Jones, of the Wilkesbarre, however, say that,

while on their course and straight in line with the tug, Pollock Rip Lightship bore nearly right ahead. This, testimony is more consistent with the drawing of the sails of the barges in a northerly wind than is the testimony of Capt. Tingle, of the tug. If both accounts can be reconciled, it is upon the view that the tow, from the time she passed the lower lightship, was heading on a north-northeast course, directly towards the Pollock Rip Shoals Lightship, and close to the bell buoy, which she intended to leave on her starboard side by a narrow margin, and that Capt. Tingle, of the Nottingham, upon discovering the green light of the Hart when abreast of the bell buoy, made an attempt to give her more room by bearing off two points to the north, thus bringing the northerly lightship two points on his starboard bow. This would account for the fact that the tug cleared the Hart by a larger margin than that between her and the Wilkesbarre, as seems to be agreed, and would tend to show that, at the time of the collision, barge No. 7 was more to the east than either the tug or the first barge.

If, on the other hand, we should accept the view that the Nottingham's compass course was north, and that the barges followed straight in line with the stern light of the tug, then the courses were converging, and barge No. 7 probably farther to the east than the tug, which had passed the point of intersection when she made the schooner's green light.

But, whether the courses of the tow and schooner were nearly parallel, and both close to bell buoy, or slightly converging, we are of the opinion that the tug was at fault in running too near the easterly side of the channel and to the bell buoy. Considering the shoals to the eastward of the bell buoy, we think the tug gave the schooner but little chance to maneuver, and was at fault in not making an earlier discovery of the schooner's lights, and in not making an earlier attempt to perform her duty of keeping out of the schooner's way.

We are further of the opinion that barge No. 7 was at fault, in that she kept no proper lookout, did not observe the schooner's movements, and therefore made no attempt to change her wheel when a collision was imminent. While this probably would not have averted a collision, it seems a reasonable probability that the blow would have been lessened, and a possibility that the loss of the schooner might have been avoided.

The schooner came upon the hawser, broke it, and the bow of barge No. 7 struck the schooner's port quarter, cutting deeply in, so that she immediately began to fill and sank within a few minutes.

The more difficult question is as to the alleged faults of the schooner in her maneuvers immediately preceding the collision. Though the libel alleges that the schooner held her course, it is conceded by those on board that she did not do so; and there are some discrepancies in the evidence from the Hart as to when her wheel was changed, and as to the reasons for the change.

The Hart, just prior to the collision with barge No. 7, struck the bell buoy near the mizzen rigging on the port side. The master of the Hart says no change of the wheel had been made previous to this time; that upon striking the buoy, his wheel was first rolled hard

up in order to throw the schooner's stern to windward, so that the bell buoy would not sweep away the boat on the stern davits; that she fell off from a point to a point and a half to the eastward, or to port; that he then first saw the barge No. 7, without lights, coming in under his lee, possibly once and a half his vessel's length away, heading about for the schooner's main rigging; that he then ordered the wheel hard down, seeing that there was then no chance to keep off clear of the barge; that his vessel did not swing to starboard, and was heading about south half west when the collision occurred.

It is claimed by the Hart that the barge was without lights, and no lights were observed on the barge by witnesses on the Hart or upon the schooner McCann, which was following her on a similar course but slightly to the eastward.

Upon the whole evidence as to the lights upon barge No. 7, we are of the opinion that the positive testimony that the lights were burning, in connection with the probability of the observance of this legal duty, outweighs the testimony of nonobservance of the lights. Though those on the Hart had not observed the green light on barge No. 5, it was seen by the McCann in time to enable her to avoid barge No. 5 by going to the east. Moreover, there is some reason for thinking that the lights of barges No. 7 and No. 5 may have been observed by the Hart before she struck the bell buoy.

According to Burghardt, the wheelsman of the Hart, the wheel was put up before reaching the bell buoy in order to avoid the tow, and was hard up when the bell buoy was struck, and was then put down to avoid the bell buoy. It seems more probable that the Hart was brought in contact with the bell buoy by a change of course to the eastward in an attempt to avoid the tow which was crowding her, than that her compass course, taken without regard to the presence of the tow, would have brought her so far to the east as to strike the bell buoy.

We think, however, that if in fact the lights of barges No. 7 and No. 5 were not seen from the schooner, this was clearly a fault; and as the evidence from the Hart is so strongly to the effect that she did not see the lights, we must find her in fault in that particular.

We are unable to accept the view that, even after the Hart had put up her wheel so that she was heading south half west, the barge was under the schooner's lee, heading for the main rigging on her port side. We are of the opinion that such a relative position of the vessels immediately before the collision is more reasonably accounted for upon the theory that the schooner's wheel was put hard down upon striking the bell buoy, as Burghardt says it was, bringing her head back to her south-southwest course and possibly even further to the west. Hanson, master of barge No. 7, testifies that Pendleton, master of the Hart, immediately after the collision, explained the accident by saying that he thought he didn't have room enough, that the tug was too far over to the eastward, that he was too close to the bell buoy and had to haul out, and thought he would stand across between the two barges and break the hawser.

That the Hart, in clear water and while on a course well to the

143 F.—60

westward of the bell buoy, would voluntarily have luffed across a hawser between two barges seems so extreme and unreasonable a view that we cannot adopt it. Even had the Hart failed to observe the second and third barges, there would have been no reason for a change of course of the Hart if the tow was as far to the westward as Capt. Tingle places it.

While there is reason to think that the Hart did in fact see the barges, and was crowded so far to the east that she gave way until she struck the bell buoy, and, in consequence, chose to go to the westward and risk the danger of crossing the hawser rather than risk the danger of the shoals to the east, she is not entitled to the benefit of such a finding in the face of her strong proofs to the contrary. Her own proofs compel us to find that she negligently took a course so far to the eastward that it brought her upon the bell buoy; that her lookout was in fault for a failure to discover the bell buoy and the barges No. 7 and No. 5; that she maneuvered in ignorance of the barges, and discovered them when it was too late to make any effective movements to avoid them.

We are of the opinion, however, that the faults of the schooner do not relieve the tug and barge No. 7 from the consequences of their own faults. While the schooner did not hold her course, it is probable that, had she done so, she would still have come into collision with a tow, and had she gone farther to the east she was in some danger of jibing and going on the shoals. The Mary McCann, which was some three or four hundred feet to the eastward, avoided the last barge of the tow by a narrow margin, going easterly over the shoals. While there is a doubt whether the Hart would have cleared the tow, it was her duty to be diligent in her attempt to do so, and, having failed in this duty, she must be held in part responsible.

The decree of the District Court is reversed, and the case is remanded to that court, with directions to apportion to each party one-half of the damages and of the interest thereon, and one-half of the costs in the District Court; and the appellant recovers its costs of appeal.